# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TED L. ARTZER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-4118-JWL |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying Social Security Disability (SSD) benefits under

sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423

(hereinafter the Act). Finding no error in the Commissioner's final decision, the court

ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C.

§ 405(g) AFFIRMING that decision.

## I.    Background

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of
Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the
defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action
is necessary.

Plaintiff applied for SSD, alleging disability beginning June 30, 1999. (R. 16, 56). Plaintiff's date last insured for SSD benefits was September 30, 2006. (R. 16, 553).[2] At a hearing on December 5, 2007, Plaintiff amended his onset date to June 15, 2004. (R. 520). Consequently, the relevant period for the court's review of the question of disability is June 15, 2004 through September 30, 2006. Plaintiff exhausted proceedings before the Commissioner and in July 2008 sought judicial review of the Commissioner's decision denying benefits. Artzer v. Astrue, Case No. 10-4088-JAR (D. Kan. July 28, 2010) (Complaint). In proceedings before Judge Robinson of this court, the Commissioner made a motion to remand, and the parties provided an "Agreed Order of Reversal and Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g)," which the court entered. Id. (D. Kan. Feb. 22, 2011) (Doc. 16); see also, (R. 572-73) (all further citation to proceedings before Judge Robinson will be to copies of documents in the administrative record of this case).

On remand, a new Administrative Law Judge (ALJ) held another hearing, and issued another decision denying benefits. (R. 553-65). The Appeals Council declined to assume jurisdiction of the ALJ's decision and that decision became the "final decision of the Commissioner of Social Security after remand by the court." (R. 539-40). Plaintiff timely filed another complaint seeking judicial review of that decision. (Doc. 1).

_____

[2]As cited, both ALJ decisions found that Plaintiff is insured for SSD benefits only through September 30, 2006. Plaintiff does not allege error in this finding.

Plaintiff claims the ALJ erred in her RFC assessment because she improperly evaluated the medical opinions, because the credibility determination is not supported by the record, and because she did not perform a function-by-function discussion of Plaintiff's abilities before expressing the RFC in terms of the exertional levels of work. He also claims the hypothetical question relied upon by the ALJ is not supported by the record, and the ALJ did not properly apply the Medical-Vocational Guidelines.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  <u>Blea v. Barnhart</u>, 466 F.3d 903, 907 (10th Cir. 2006); <u>accord</u>,

<u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084,

1088 (10th Cir. 1999).  The court addresses each allegation of error presented in

Plaintiff's Brief, but it begins by considering the credibility determination because

Plaintiff argues that the alleged error in the credibility findings demonstrates the error in

evaluating Dr. Winkler's opinion.

## II.     The Credibility Determination

Plaintiff claims that the ALJ's credibility determination is not supported by the

record.  He argues that the record evidence supports the credibility of his allegations of

symptoms, and that the reasons relied upon by the ALJ to discount Plaintiff's credibility

actually support it.  The Commissioner argues that substantial evidence supports the

ALJ's credibility determination.  She points out that the question is not whether Plaintiff

experiences the symptoms complained of, but whether the severity of the symptoms is

disabling.  She points to record evidence supporting each of the reasons given by the ALJ

to discount Plaintiff's allegations.

### A.     The ALJ's Credibility Findings

The ALJ noted that the first ALJ's decision was issued after Plaintiff's date last

insured and "contains a detailed analysis of the medical evidence during the relevant

period," and that Plaintiff "has not submitted any new or material evidence [since then]

that relates or dates back to the relevant period," and consequently the ALJ "adopted and incorporat[ed] by reference the prior Administrative Law Judge's summary and analysis of the medical evidence" (R. 21-23) into her decision. (R. 558). She also summarized the record evidence and hearing testimony in her decision. (R. 556-57, 558-63). In this analysis, she included a summary and evaluation of Plaintiff's allegations of disabling symptoms resulting from his impairments, and determined that the allegations "are not credible" (R. 558), and "are less than fully credible." (R. 560).

The court discerns seven reasons given by the ALJ to discount Plaintiff's credibility: (1) "the objective evidence has been underwhelming and is not consistent with allegations of severe and unremitting pain" (R. 560); (2) clinical signs and findings were relatively normal during the relevant period, id.; (3) Plaintiff's medical treatment reveals that he responded well to carpal tunnel surgeries; that he was self-limiting during physical therapy, and that he was using mostly over-the-counter pain medication; (4) Plaintiff's activities are inconsistent with disabling pain; (5) Plaintiff's reports of activities in the medical record, in his reports to the Social Security Administration, and at the hearings have been inconsistent; (6) no physician opined that Plaintiff must lie down during the day and Plaintiff's function reports do not indicate such a need; and (7) Plaintiff's poor work history reflects negatively on his credibility. (R. 561).

### B.    Analysis

As Plaintiff acknowledges, the court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding

on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  Moreover, Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is record evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).  But, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).  Therefore, where the ALJ reaches a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

Much of Plaintiff's credibility argument reflects merely that he views the evidence in a different light than did the ALJ. For example, Plaintiff points out that the ALJ noted that Plaintiff received reminders from his physicians to remain compliant with his medications and that the "physicians questioned why he did not receive benefit from Methotrexate and Sulfasalazine." (Pl. Br. 39) (quoting R. 561). He argues that he "should not be penalized and found less than credible because his physicians reminded him of the importance of taking his medications properly," or "because his medications were not eff[ic]acious." Id. While Plaintiff's view of the evidence is permissible, that does not make the ALJ's view erroneous or unreasonable. Moreover, Plaintiff's argument looks at but two of the factors in the paragraph in which the ALJ discussed Plaintiff's medical treatment and determined as reason number 3 above that it did not support the severity of symptoms alleged by Plaintiff.

In a similar vein, Plaintiff attacks the ALJ's analysis of his daily activities and alleges that the ALJ's characterization of "frequent" visits with friends and family does not comport with a function report wherein he stated that he did this "on the weekends." The court finds no merit in such a hypertechnical view of the evidence that weekly visits cannot be characterized as frequent. Further, Plaintif argues that going fishing once a month is not inconsistent with allegations of disability. While it is true that, considered in isolation, fishing once a month is not conclusive of a finding of "no disability," Plaintiff ignores that "fishing once a month" was but one factor in a paragraph in which the ALJ considered Plaintiff's reports of numerous activities and concluded that when considered

in context with contemporaneous reports during the relevant period and reports that Plaintiff keeps active around the house doing housework and yardwork, that considered in totality, the activities are inconsistent with allegations of disabling pain.

Moreover, Plaintiff's argument that his activities merely demonstrate the ability to perform a limited daily routine does not square with the evidence as cited by the ALJ. Plaintiff also argues that the ALJ chose to ignore much of the evidence, but the evidence he cited in that regard was his own testimony. It is Plaintiff's testimony which is the object of a credibility determination, and although Plaintiff cites authority for the proposition that an ALJ must <u>consider</u> all of the evidence, he does not provide authority for the proposition that an ALJ must <u>accept as true</u> a claimant's testimony when considering the credibility of that claimant's allegations of symptoms.

Plaintiff acknowledges that his performance in physical therapy was self-limited, but he argues that the ALJ did not question him about that during the hearing, and did not consider whether the "self-limiting" was due to pain. The court does not see the point of this argument. The ALJ did not find that Plaintiff was malingering, so the court will assume she found Plaintiff's self-limitation was due to pain. However, the Tenth Circuit has long recognized that the inability to work pain-free is not a sufficient reason to find a claimant disabled. <u>E.g.</u>, <u>Qantu v. Barnhart</u>, 72 F. App'x 807, 811 (10th Cir. 2003); <u>James v. Sullivan</u>, No. 91-7075, 1992 WL 95466 (10th Cir. April 30, 1992).

Plaintiff also argues that relying on self-limitation was error, because before an ALJ may rely upon a claimant's failure or refusal to pursue treatment, she must apply the

four-factor <u>Frey</u> test.  (Pl. Br. 42-43) (citing <u>Frey v. Bowen</u>, 816 F.2d 508, 517 (10th Cir.

1987).  The <u>Frey</u> test is inapposite here because Plaintiff did not fail or refuse to pursue

treatment.  Rather, he specifically participated in physical therapy but limited his effort in

performance during that therapy.

Plaintiff argues that the ALJ erred when she noted that "no physician has opined

that the claimant should lie down during the day. The two function reports during the

relevant period, dated October 13, 2004, and May 9, 2005, do not mention that the

claimant was lying down during the day."  He argues that the ALJ's error is demonstrated

by the fact that one of the two function reports cited by the ALJ states that Plaintiff

watches "TV daily.  Lay [sic] down on couch with pillows propped under my knees."

(PL. Br. 45) (citing R. 125).  The court cannot agree that error is shown.  While Plaintiff

is correct that one function report demonstrates that he lies down when viewing TV, the

court finds no error, in context.  The purpose of the ALJ's credibility determination is to

evaluate the credibility of a claimant's allegations of <u>symptoms resulting from his

impairments</u>.  The essence of the ALJ's finding is that the record evidence reveals no

medical need to lie down during the day, and the only thing demonstrated by the function

report cited by Plaintiff is that he chooses to watch TV lying down with pillows under his

knees.  It does not suggest that Plaintiff lies down to rest or that lying down while

watching TV is a necessity.  The ALJ's finding that there is no medical need to lie down

is not error.  Any error in failing to note that Plaintiff lies down to watch TV is harmless.

Finally, Plaintiff acknowledges that an ALJ may consider work history in the credibility analysis, but implies that the ALJ erred in finding that his work history reflects negatively on his credibility. He argues this is so because he worked occasionally at a union job in which he was never hired full time with benefits, and that the rest of the time he survived by drawing unemployment. (Pl. Br. 46). That is the very point of the ALJ's finding regarding work history. Many years of only occasional work performed at below the level of substantial gainful activity, and otherwise relying on unemployment, suggests low motivation to work, which suggests that Plaintiff's allegations of disabling symptoms are also not credible. The court finds no error in the ALJ's credibility determination.

## III.     Evaluation of the Medical Opinions

Plaintiff claims the ALJ erred in weighing the medical opinions of his treating physician, Dr. Dasaraju, and of Dr. Winkler, a rheumatologist who reviewed the medical evidence and provided an opinion in response to written interrogatories propounded by the ALJ in May 2011. He argues that the reasons given by the ALJ to discount Dr. Dasaraju's opinion are not legitimate and are not supported by the record evidence, but that the record evidence, in fact, supports Dr. Dasaraju's opinion. With regard to Dr. Winkler's opinion, Plaintiff argues that the physician's opinion does not account for the severity of Plaintiff's pain and psoriatic arthritis, and that the evidence does not support the weight accorded that opinion by the ALJ. The Commissioner argues that the ALJ considered and properly evaluated the conflicting medical opinions of Dr. Dasaraju, Dr. Winkler, and another physician who reviewed the record medical evidence, Dr.

11

Tawadros.  She argues that the ALJ properly denied "controlling weight," but accorded "limited weight" to Dr. Dasaraju's opinion, accorded no weight to Dr. Tawadros's opinion, and accorded "significant weight" to Dr. Winkler's opinion, and that the record evidence supports these findings.

### A.    The ALJ's Evaluation of the Medical Opinions

As previously noted, the ALJ adopted the first ALJ's summary and analysis of the medical evidence (R. 21-23), and summarized the record evidence in her decision.  (R. 556-62).  She then explained her evaluation of and the weight she accorded to the medical opinions of Dr. Winkler, Dr. Tawadros and Dr. Dasaraju as introduced above; Dr. Vopat, a state agency physician who reviewed the record evidence and provided an opinion; and Dr. White, an orthopedic surgeon who reviewed the medical evidence and provided an opinion in response to written interrogatories propounded by the ALJ in April 2011.  (R. 562-63).  The ALJ accorded no weight to Dr. Tawadros's opinion, "some weight" to Dr. Vopat's opinion, "limited weight" to the opinions of Dr. White and Dr. Dasaraju, and "significant weight" to Dr. Winkler's opinion.  Plaintiff alleges error only in the ALJ's evaluation of the opinions of Dr. Dasaraju and of Dr. Winkler.  Therefore, the court accepts the ALJ's evaluation of the opinions of Dr. Tawadros, Dr. Vopat, and Dr. White, and considers them only in relation to its evaluation of the opinions of Dr. Dasaraju and Dr. Winkler.

### B.    Legal Standard for Evaluating Medical Opinions

A treating physician's opinion about the nature and severity of plaintiff's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight she assigned the treating physician's opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

In such a case, all medical opinions will be evaluated in accordance with factors contained in the regulations. 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013). And, a treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Watkins, 350 F.3d at 1300. However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . medical opinion[s] and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). After considering the regulatory factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinions. If the ALJ rejects the treating source opinion completely, he must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

### C.    Analysis

The ALJ determined he could not accord controlling weight to Dr. Dasaraju's opinion because it was inconsistent with the opinions of Drs. Vopat, Winkler, and Tawadros, and that determination is correct.  An opinion may be given controlling weight only if it is "not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(d)(2); SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 112 (Supp. 2012).  Therefore, the threshold for denying controlling weight is low.  SSR 96-2p explains that "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Richardson v. Perales, 402 U.S. 389 (1971).  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2013).  As that ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."  Id.

Because the opinion of either Dr. Vopat, Dr. Winkler, or Dr. Tawadros is a medical opinion of both a medical expert and an expert in evaluating disability pursuant to the Social Security Act and regulations, each opinion is relevant evidence which a reasonable mind would accept as adequate to support a conclusion that is contrary to Dr. Dasaraju's opinion.  Therefore Dr. Dasaraju's opinion is inconsistent with the other substantial evidence in the case record and may not be accorded controlling weight.

14

Having determined that Dr. Dasaraju's opinion is inconsistent with other substantial evidence in the record, the ALJ articulated six additional reasons to discount Dr. Dasaraju's opinion. (1) The opinion is vague as to the onset of the limitations assessed. (R. 563). (2) The opinion that Plaintiff is limited to "sedentary sit down desk type work" (R. 512), is an opinion regarding RFC which is an issue reserved to the Commissioner. (R. 563). (3) There is nothing in the record to support a restriction to sedentary work. Id. (4) Dr. Winkler opined that Plaintiff was able to lift at least twenty pounds, and was able to stand and walk over six hours in a workday. Id. (5) The evidence does not support limitations in Plaintiff's use of his hands and arms. Id. And, (6) Dr. Dasaraju's progress notes do not support his retrospective opinion. Id.

Plaintiff argues error in reason (2), noting that even opinions regarding issues reserved for the Commissioner may not be ignored and must be evaluated in accordance with factors contained in the regulations. (Pl. Br. 32) (citing SSR 96-5p). Plaintiff is correct that Dr. Dasaraju has "an absolute right" to express an RFC opinion, but such opinions will not be given any special significance or controlling weight. 20 C.F.R. § 404.1527(e)(2 & 3); SSR 96-5p, West's Soc. Sec. Reporting Serv. 123-24 (Supp. 2013); SSR 96-8p, West's Soc. Sec. Reporting Serv. 150, n.8 (Supp. 2013). Therefore, it is not error for an ALJ to note while weighing such an opinion that it is on an issue reserved to the Commissioner, and to discount it, in part, on that basis.

Plaintiff argues that the ALJ's finding that "there is nothing in the record to support a restriction to 'sedentary' work," is contrary to the ALJ's own finding in the

same paragraph that "there is evidence of disorganization of motor functioning." (Pl. Br. 32) (quoting R. 563) (emphasis in Pl. Br.). While Plaintiff's argument is literally correct, in context it is clear that the decision contains a typographical error, and the ALJ's finding actually was that there is no evidence of disorganization of motor functioning.

Twice in the decision prior to making the statement which Plaintiff quotes, the ALJ noted that there is no evidence of disorganization of motor function. First, when explaining her step three analysis the ALJ found that "there is no evidence that the claimant's diabetes resulted in end organ damage such as neuropathy with persistent disorganization of motor function." (R. 557) (emphases added). Later, when summarizing the record evidence in her RFC assessment, the ALJ discussed the evidence relating to diabetes and stated once again that "there is no evidence during the relevant period consistent with the claimant's testimony of significant pain or numbness in the bilateral feet resulting in disorganization of motor function." (R. 559) (emphases added). In light of these earlier findings, it would be unusual indeed when explaining that "there is nothing in the record to support a restriction to 'sedentary' work" for the ALJ to find for the first time that "there is evidence of disorganization of motor functioning." (R. 563) (emphasis added).

The court's understanding is supported by the context and organization of the ALJ's conclusion. Her explanation in its entirety is presented here:

> Additionally, I note that there is nothing in the record to support a restriction to "sedentary" work. As noted above, the claimant's gait and station has remained steady and intact (Ex. 2F [(R. 142-43)]). There is no

evidence of joint instability from the arthritis in the claimant's knees. Although the claimant had some numbness in his right foot from his neuropathy, there is evidence of disorganization of motor functioning. Quite simply, the medical evidence of record does not reflect that the claimant was unable to do the standing, walking and lifting typically required of light work.

(R. 563).

The statement that "there is evidence of disorganization of motor functioning" simply does not fit within this paragraph. The paragraph lists examples of evidence which will not support a restriction to sedentary work; such as, gait and station is steady and intact; and no joint instability in the knees. Logically, the next sentence fits in this list only if it refers to <u>no</u> disorganization of motor function.

Moreover, the structure of the sentence in which the clause regarding disorganization of motor functioning appears requires that there be <u>no</u> evidence of disorganization of motor functioning. Logically, "some numbness in his right foot from his neuropathy" would suggest that there might also be disorganization of motor functioning. However, the sentence begins with the contrasting conjunction "although," meaning "regardless of the fact that;" The Am. Heritage Coll. Dict. 42 (4th Ed. 2002); and suggesting that the second clause is not expected to follow logically from, but is in contrast with the premise of the first clause. Therefore, the first clause, "Although the claimant has some numbness in his right foot from his neuropathy," should be in contrast to the second clause. As written "there is evidence of disorganization of motor functioning" flows from and confirms the premise of the first clause rather than

contrasting with it or being "regardless of" it. On the other hand, the thought that there is no evidence of disorganization of motor functioning would properly fill the expected second clause position, contrast with, be regardless of, and not logically follow from the premise of the first clause--that Plaintiff has some numbness from neuropathy. In the context of the sentence, the paragraph, and the entire decision, there can be no doubt that the ALJ found no evidence of disorganization of motor functioning.

Plaintiff argues that it was error for the ALJ to rely upon Dr. Winkler's finding that Plaintiff could stand and walk more than six hours in a work day because "she previously found against Dr. Winkler for failing to find that Plaintiff suffers from psoriatic arthritis." (Pl. Br. 33). Plaintiff's argument fails for two reasons. First, he cites no authority for the proposition that an ALJ might reject certain opinions of a physician while accepting her other opinions. While it is true that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to h[er] position while ignoring other evidence;" Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012); that is not what happened here. Here, the ALJ recognized both portions of Dr. Winkler's opinion, and explained her findings with regard to both.

Second, the record does not reveal that the ALJ "found against Dr. Winkler for failing to find that Plaintiff suffers from psoriatic arthritis," as suggested by Plaintiff. The ALJ accorded significant weight to Dr. Winkler's opinion, and she did not reject the physician's opinion that Plaintiff did not have psoriatic arthritis. Here is the ALJ's entire discussion regarding the finding of psoriatic arthritis:

Furthermore, the claimant's physicians made a possible diagnosis of psoriatic arthritis (Ex. B7F/108, 109). The claimant was prescribed Methotrexate and Sulfasalazine (Ex. B7F/109). I note that subsequent physicians, including Nancy Nowlin, M.D., a rheumatologist, have questioned the diagnosis of psoratic arthritis. Specifically, Dr. Nowlin noted that the objective studies and the claimant's clinical presentation were most consistent with osteoarthritis and not psoriatic arthritis (Ex. B9F/36-37; BI2F/116). Anne Winkler, M.D., a board certified rheumatologist, also opined that the claimant does not have psoriatic arthritis (Ex. B11F). However, I have given the claimant the benefit of the doubt and have included psoriatic arthritis as a severe, medically determinable impairment.

(R. 560). The ALJ did not reject Dr. Winkler's opinion regarding psoriatic arthritis. Rather, she gave Plaintiff the benefit of the doubt in that regard. There is no error in the ALJ's decision to fully credit Dr. Winkler's opinion that Plaintiff can stand and walk more than six hours in a work day while also giving Plaintiff the benefit of the doubt (a very generous benefit in the circumstances) that he has psoriatic arthritis.

In a similar rationale, Plaintiff argues that it was error to decide that Dr. Dasaraju's opinion was not worthy of controlling weight in part because it is inconsistent with Dr. Tawadros's opinion, while at the same time purporting to accord "no weight" to Dr. Tawadros's opinion. Again, this is not error. As Plaintiff suggests, the ALJ accorded no weight to Dr. Tawadros's opinion, and Plaintiff points to no portion of that opinion upon which the ALJ relied in assessing Plaintiff's RFC. With regard to affording controlling weight to Dr. Dasaraju's opinion, the ALJ stated that it could not be done because the opinion was inconsistent with Dr. Tawadros's opinion (among others).

Controlling weight is <u>required</u> to be given to the opinion of a treating physician if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic

techniques <u>and</u> is not inconsistent with the other substantial evidence in the case record. <u>Watkins</u>, 350 F.3d at 1300; <u>see also</u> 20 C.F.R. § 404.1527(d)(2). Here, the opinion could not be afforded controlling weight because it did not meet the second requirement--it was inconsistent with Dr. Tawadros's opinion. That determination does not rest on the further question of what weight is given to Dr. Tawadros's opinion. The first question is whether the treating source opinion is worthy of controlling weight. It is not until that question is answered in the negative that the ALJ must consider all of the medical opinions and decide the relative weight of which they are worthy. <u>Id.</u> 350 F.3d at 1300-01; <u>see also</u> 20 C.F.R. § 404.1527(d). The ALJ followed the correct standard here. He determined Dr. Dasaraju's opinion could not be given controlling weight because it was inconsistent with Dr. Tawadros's opinion--which is other substantial evidence in the record. Then, he weighed Dr. Tawadros's opinion and determined it was worthy of no weight. That determination does not change the fact that Dr. Tawadros's opinion is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in [Dr. Dasaraju's] medical opinion." SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2013).

Plaintiff's claim that the ALJ accorded too much weight to Dr. Winkler's opinion rests on his earlier arguments that the ALJ erred in considering Plaintiff's daily activities, and that the ALJ erred in according significant weight to Dr. Winkler's opinion that Plaintiff does not have psoriatic arthritis. Because the court has already addressed these issues and determined that they do not constitute error, Plaintiff has not shown error in the

weight accorded Dr. Winkler's opinion. The ALJ stated that she had accorded significant weight to Dr. Winkler's opinion because (1) Dr. Winkler reviewed the entire medical record from the relevant period, (2) the opinion is "generally consist" with other opinions including Dr. Vopat's opinion, (3) Dr. Winkler is a board-certified rheumatologist, and (4) the opinion is well-supported by the clinical signs and findings and (5) by claimant's daily activities. Plaintiff has shown no error in the ALJ's rationale, and the court finds that it is supported by the record evidence. Plaintiff has shown no error in the evaluation of the medical opinions.

## IV. Further Errors in Assessing RFC

Plaintiff also argues that the ALJ failed to express Plaintiff's RFC on a function-by-function basis before expressing it in terms of the exertional basis of light work, and that the ALJ's hypothetical presented to the vocational expert is not supported by the record. Neither argument has merit.

With regard to her RFC assessment, the ALJ specifically discussed and summarized the record evidence, considered the credibility of Plaintiff's allegations, and weighed the opinion evidence. (R. 556-63). Moreover, she specifically explained her function-by-function assessment of Plaintiff's capabilities:

> Although the claimant's allegations of total disability are not fully credible, I find the claimant's impairments require a reduction of the residual functional capacity. Based on the totality of evidence, I find the claimant was capable of performing less than the full range of light work (i.e., lifting, carrying, pushing, or pulling twenty pounds occasionally and ten pounds frequently; standing and walking six hours in an eight hour day and sitting for six hours in an eight hour workday). The claimant remained able to

climb ramps and stairs occasionally, but he was not able to climb ladders or scaffolds secondary to his arthritis in the shoulders. However, he remained able to occasionally crawl and frequently balance, stoop, kneel and crouch. Additionally, due to his carpal tunnel syndrome, the claimant could frequently reach, handle, finger, feel, push and pull with his hands bilaterally. However, the claimant could only occasionally reach overhead with the left upper extremity due to his arthritis in the shoulders. Furthermore, the claimant was limited to frequent operation of foot controls bilaterally secondary to his diabetic neuropathy. Additionally, the claimant could frequently tolerate exposure to moving mechanical parts; dusts odors, fumes and pulmonary irritants and vibration. He would also be able to tolerate frequent operation of a motor vehicle. However, the claimant could only occasionally tolerate exposure to humidity and wetness and extremes of heat and cold secondary to his overall complaints of arthritis in several joints. Finally, the claimant would be precluded from any exposure to unprotected heights due to his obesity and neuropathy. Weighing all relevant factors, I find that claimant's subjective complaints do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision.

(R. 561-62). The ALJ also stated her RFC assessment on a function-by-function basis in finding number five:

5.      After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that the claimant could lift and carry twenty pounds occasionally and ten pounds frequently. The claimant could stand and walk for six hours in an eight-hour day and he could sit for six hours in an eight-hour day. The claimant could frequently reach, handle, finger, feel, push and pull with his hands bilaterally. However, the claimant could only occasionally reach overhead with the left upper extremity. The claimant retained the ability to frequently operate foot controls. Although the claimant was unable to climb ladders or scaffolds, he could occasionally climb stairs and ramps. The claimant could occasionally crawl and frequently balance, stoop, kneel and crouch. Additionally, the claimant could frequently tolerate exposure to moving mechanical parts, dusts, odors, fumes and pulmonary irritants and vibration. He would also be able to tolerate frequent operation of a motor vehicle. However, the claimant could only occasionally tolerate exposure to

humidity and wetness and extremes of heat and cold. Finally, the claimant would be precluded from any exposure to unprotected heights.

(R. 557-58) (bolding omitted). Both of these quotations illustrate the ALJ's identification of Plaintiff's functional limitations on a function-by-function basis. Plaintiff points to no functional limitation which has been erroneously omitted from or erroneously included in the ALJ's consideration.

To the extent Plaintiff may be arguing that it was error for the ALJ to state in each of these paragraphs that she found Plaintiff able to perform a range of light work before she stated in the same paragraph the function-by-function limitations she assessed for Plaintiff, the court finds no error. Once again, Plaintiff relies upon a hypertechnical reading of the ruling. To be sure, SSR 96-8p, as cited by Plaintiff states that an RFC may be expressed in terms of the exertional levels of work only after the limitations are expressed on a function-by-function basis. SSR 96-8p, West's Soc. Sec. Reporting Serv. 143 (Supp. 2013). However, the ruling clarifies that the function-by-function assessment is necessary before evaluating steps four and five of the sequential evaluation process in order to preclude the introduction of errors at those steps by applying exertional levels without considering each and every functional limitation. SSR 96-8p, West's Soc. Sec. Reporting Serv. 145-47 (Supp. 2013). Here Plaintiff cannot show that a function-by-function assessment was not made, and she does not argue that the ALJ failed to consider and apply any particular functional limitation.

Plaintiff's argument that the hypothetical question presented to the vocational expert is not supported by the record, rests upon his assertion that "Plaintiff's true RFC opined by Dr. Dasaraju was improperly rejected by the ALJ." (Pl. Br. 48). Because the court found no error in the ALJ's evaluation of Dr. Dasaraju's medical opinion, Plaintiff's argument of error based thereon cannot stand. Plaintiff has shown no error in the ALJ's assessment of Plaintiff's RFC.

## V.    Application of the Medical-Vocational Guidelines

Plaintiff's argument with regard to application of the Medical-Vocational Guidelines is also predicated upon the fact that "Dr Dasaraju opined Plaintiff has been limited to sedentary work." (Pl. Br. 49). Again, because the court found no error in the ALJ's evaluation of Dr. Dasaraju's medical opinion, Plaintiff's argument of error based thereon cannot stand. Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 17th day of March 2014, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**